19257

W. E. FENDER, Jr., Appellant, v. Jennie Ray B. FENDER, Respondent.

(182 S. E. (2d) 755)

*Messrs. I. A. Smoak, Jr.,* of Walterboro, *Frank L. Taylor,* and *William J. Nicholson,* of Columbia, *for Appellant,*

*Messrs. Harvey, Harvey & Battey,* of Beaufort, *for Respondent,*

July 27, 1971.

Lewis, Justice.

The parties to this action were divorced on November 20, 1959, by a decree of the Civil and Criminal Court for Colleton County upon the ground of desertion by the husband. The divorce decree approved an agreement between the parties as to child custody, alimony, and child support, under which the wife was awarded custody of the child of the marriage, a son, then five (5) years of age; monthly alimony in the amount of $125.00; and $75.00 per month for support of the child, in addition to the cost of his schooling, clothes, and medical care.

The present proceeding was instituted by the wife in July 1968 requesting an increase in the amount of alimony and child support payments upon the ground that a change in conditions warranted such relief. After an evidentiary hearing, the judge of the Civil and Criminal Court for Colleton County issued a supplemental order on February 21, 1969 modifying the alimony and child support provisions of the 1959 divorce decree by (1) increasing the amount of monthly alimony payments to the wife from $125.00 to $200.00; (2) increasing the monthly payments to the wife for child support from $75.00 to $200.00, with $25.00 of such amount to be deposited in a bank account to be used for current costs of clothing and other incidental expenses of the child; (3) requiring the husband to pay costs of any hospitalization and any "long-term" or "unusual" medical expenses for the child; (4) requiring the husband to deposit in a savings institution, jointly in his name and that of the child, the sum of $100.00 each month for the child's "future need and benefit," with the provision that no funds could be withdrawn from the savings account except upon prior order of the court; and (5) requiring

the husband to purchase and keep in force a life insurance policy upon his life in the amount of $15,000.00, with the child as beneficiary, for the purpose of assuring that funds will be available for the future higher education of the child.

The husband has appealed from the supplemental order under exceptions which, in general, challenge (1) the legal and factual basis for the increases in alimony and child support, and (2) the power of the lower court to order him to provide the savings account and the insurance policy for the child's benefit, in the manner and for the purposes stated.

The lower court modified the previous divorce decree by increasing the amount of the payments for alimony from $125.00 per month to $200.00. The husband has excepted to this portion of the order upon the grounds that, (1) since the previous award of $125.00 per month for alimony was based upon an agreement between the parties, the court was without power to modify its terms; and (2) if such power existed, the amount of the increase was excessive.

The power of the court to modify a decree for alimony, based upon an agreement of the parties, was sustained in *Jeter v. Jeter*, 193 S. Ct. 278, 8 S. E. (2d) 490. While the court in *Kendall v. Kendall*, 213 S. C. 471, 50 S. E. (2d) 191, refused, under the particular facts, to modify the award for alimony in that case, the decision in no way impinged upon the rule firmly adopted in *Jeter*.

The husband has petitioned the court to overrule the above holding in *Jeter*. The rule there adopted is sound and we adhere to it.

The further contention that the increase in the amount of the alimony payments is excessive is also without merit. Section 20-116 of the 1962 Code of Laws sets forth the power of the court to review an award for alimony as follows:

"Whenever any husband, pursuant to a judgment of divorce from the bonds of matrimony, has been required

to make his wife any periodic payments of alimony and the circumstances of the parties or the financial ability of the husband shall have been changed since the rendition of such judgment, either party may apply to the court which rendered the judgment for an order and judgment decreasing or increasing the amount of such alimony payments or terminating such payments and the court, after giving both parties an opportunity to be heard and to introduce evidence relevant to the issue, shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the husband, decreasing or increasing or confirming the amount of alimony provided for in such original judgment or terminating such payments."

The parties were married on June 8, 1952 and lived together until Febuary 14, 1958. During a portion of that time, the husband was serving his internship as a medical doctor and the wife was employed. The original award for alimony was made in 1959. The agreed Statement shows "that the income before taxes of the appellant (husband), a medical doctor, had increased from approximately $15,000.00 in 1960 to approximately $32,000.00 in 1966 and $50,000.00 in 1967." Unchallenged is the following finding in the order of the lower court: "the plaintiff (husband), * * *, had a gross income for the year 1967 of more than three (3) times the amount earned in 1959. The testimony, likewise, shows that in 1959 Dr. W. E. Fender (husband) was a young physician seeking to establish himself in the community, living in a rental house and with relatively few assets whereas today he is a well established physican in the community owning his own residence, office building, property at Sea Pines Plantation on Hilton Head Island, South Carolina, stocks, bonds and bank accounts." The husband is now remarried and has a child of the second marriage.

The record shows that the wife is employed and has an income of approximately $75.00 per week, or $300.00

per month. The husband is required, under the order of the lower court, to contribute to the wife the sum of $200.00 per month alimony and $200.00 per month for child support. This would make a total received by the wife of approximately $700.00 per month, or a yearly total of $8400.00, for the support of herself and the child. Out of the above amount received by the wife, she is required to provide transportation costs to and from her work, housing, all living costs for herself and the child, and the expenses incident to the chid's attendance at high school.

The record amply sustains the findings of the lower court as to the increased need of the wife for additional funds for support, the increased financial ability of the husband, and the reasonableness of the increase allowed.

The husband next challenges the increase in child support payments as excessive.

We call attention to the difference in the figure for child support as contained in the Statement and that in the printed Supplemental Decree of the lower court. From the agreed Statement in the Transcript, it appears that the amount for child support was increased to $175.00 per month, with the husband required to deposit in the bank an additional amount of $25.00 per month to be used to provide clothing and incidental expenses for the child, making a total of $200.00 per month; while the printed order shows that the total monthly amount of the increased child support payment was the sum of $175.00 and that the *wife* was required to deposit the additional sum of $25.00 each month for the child's use. However, since the parties have interpreted the provisions of the order as requiring the payment of $200.00 per month for child support, we have considered the issues in the light of such interpretation.

The greatly improved financial situation of the husband has been pointed out. Additionally, the lower court based the increase in the payment for child support upon the inadequacy of the original award to now meet the reasonable

needs of the child. When the original amount was set in 1959, the child was five (5) years of age. He was fourteen (14) years of age when the last hearing was held. The record sustains the finding of the lower court that the increased cost of maintaining the child, now of high school age, required a substantial increase in the contributions of the husband for that purpose.

The amount to be allowed for child support is, under all of the facts and circumstances of the particular case, generally within the sound discretion of the trial court, and will not be disturbed on appeal unless an abuse of discretion is shown.

Under all of the facts, we do not think that the award of $200.00 per month for the support of the child constituted an abuse of discretion.

The remaining questions concern the provisions, which require the husband (1) to make monthly desposits in a savings account for the child's future needs and (2) to provide an insurance policy to assure that funds are available for the higher education of the child.

The parties agree that the purpose of the savings account is to provide security for the payment of child support.

The power of the court to require, in proper cases, that security be given to assure compliance with its orders touching the care, custody and maintenance of children is expressly granted by statute. Section 20-115, 1962 Code of Laws.

Whether such security will be required rests within the sound discretion of the court.

In order, however, to justify a requirement that security be given, the record should show that it was reasonably necessary to assure compliance with the order of the court. This record contains no such showing and that portion of the order requiring that the savings account be established as security for the payment of child

support is reversed. If it subsequently appears that security is necessary, the continuing jurisdiction of the lower court affords ample opportunity to require that it be given.

The final question concerns the requirement that the husband purchase and keep in force a whole life insurance policy upon his life, in the amount of $15,000.00, for the purpose of assuring the availability of funds for the future higher education of the child. The pertinent portions of the order, with which we are here concerned, are as follows:

"It is ordered that Dr. W. E. Fender, Jr., (the husband), provide and keep in full force and effect a policy of whole life insurance with a reputable insurance company licensed to do business in the State of South Carolina, such policy to be upon the life of W. E. Fender, Jr., (the husband), in the amount of fifteen thousand ($15,000.00) dollars with W. E. Fender, III, (the child), named as beneficiary of this policy. It is the intention of this court that this policy of life insurance shall be to assure that funds are available for the future higher education of the infant. * * *"

The question of whether the obligation of the father to support his minor child extends to providing funds for his college education is not in issue. The father recognizes such obligation and, according to his testimony, is now maintaining two college insurance policies which will provide $200.00 per month for four nine (9) month school years, beginning when the child reaches eighteen (18) years of age. The father further testified that, in addition to the education policies, he carried a life insurance policy on the child and also hospitalization insurance.

The exceptions challenge only (1) the provisions of the order which require the father to carry a life insurance policy on his life with the child as the sole beneficiary and (2) the power of the court to require the father to provide funds for the child's college education after the death of the father.

The first objection to the directive that the father provide a life insurance policy on his life concerns the requirement

that the child be named as sole beneficiary. The father contends that such provision, in effect, requires him to create an estate for his child since, upon his prior death, the amount of the policy would go to the child irrespective of the need for funds to pay for a college education. We do not so interpret the intent of the order of the lower court, although the provisions to effectuate the intent are not entirely clear.

The order states that the purpose of the insurance policy is "to assure that funds are available for the future higher education of the infant." We do not construe the order as prohibiting the father from limiting the interest of the minor child in any proceeds from the policy solely to that of securing a college education.

Whether the child will or should attend college cannot be determined with certainty at this time. It may develop that neither the competence nor desire of the child would warrant expending any amount upon a college education for him. The funds provided by the insurance policy may be, by appropriate provisions, made available to the minor *only* for his college education after a determination, at the proper time, that such expenditure should be made. The father is free, in all other respects, to name the beneficiary under the policy in the event the proceeds from the policy, or any part thereof, are not needed for the child's college education. So construing the order, the position that it requires the creation of an estate for the child for his general use and regardless of his then age is without merit.

The father further objects to providing the insurance policy in question upon the ground that it makes his obligation to support continue after his death. A possible effect of the order is to require the father to provide for the creation of a fund at his death from which the expenses of the child's education may be paid. This would be the result if the father died during the minority of the child and before the child's college education was completed. The father takes the position that the court

was in error in so requiring because his liability for support under the common law terminates at his death.

The question then is whether the court in a divorce proceeding has the power to require the father to provide a fund, effective at his death, for the purpose of assuring the continued support of his minor child.

Whatever the obligation of the divorced father might have been under the common law, the question here is controlled by the terms of Section 20-115 of the 1962 Code of Laws, which defines the power of the court in a divorce action to provide for the support of children. This section grants to the court, in any divorce action, the power to "make such orders touching the care, custody and maintenance of the children of the marriage and what, if any, security shall be given for the same as from the circumstances of the parties and the nature of the case and the best spiritual and other interests of the children may be fit, equitable and just."

The basic statutory consideration governing the allowance of support and maintenance is the welfare of the children. In order to accomplish this purpose, the grant of power is broad and comprehensive. The only limitations upon the power of the court to provide for the maintenance of children, including security therefor, is that such provisions shall be just and equitable, considered in the light of the circumstances of the parties, the nature of the case, and the best interests of the children. This broad statutory authorization includes the power, where the circumstances warrant, to require a father to provide a fund, effective at his death, for the continued support of his minor child.

The evident purpose of the lower court, in requiring that the father secure a whole life policy of insurance, was to assure that funds would be available for the college education of the minor child in the event of the early death of the father. In so doing, the court acted within its legal authority. There is no contention that, having the authority the court abused its discretion.

Accordingly, the provision of the order requiring the establishment of a savings account is reversed; otherwise, the judgment is affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.