THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Alexis Kneedler, Respondent,
v.
Shawn R. Griffin, Appellant.
 
 
 

Appeal From York County
 Robert E. Guess, Family Court Judge

Unpublished Opinion No. 2006-UP-283
Submitted June 1, 2006  Filed June 15, 2006

AFFIRMED AS MODIFIED

 
 
 
Thomas F. McDow, for Appellant.
Robert M. P. Masella, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Shawn R. Griffin (Husband) appeals a family court order adopting and modifying a Florida divorce order.  We affirm with modification.[1]
FACTS
Husband and Alexis Kneedler (Wife) married in May 1996 and divorced February 14, 2000, in Pinellas, Florida.  One child, Shiann Rose Liegh Griffin (Child), was born of the marriage on May 29, 1997.  
The Florida divorce order granted the parties joint custody, with Wifes home designated as Childs primary residence.  After the divorce, Husband moved to Massachusetts.  Wife and Child subsequently relocated to York County, South Carolina.  In October 2002, Wife filed the present complaint, seeking to domesticate the Florida order, recalculate Husbands child support payments and obtain arrearages, gain sole custody of Child, alter Husbands visitation schedule, require Husband to post a security for future child support, and attorneys fees.
Prior to a hearing on Wifes complaint, the parties settled several issues by way of consent order, which resolved some issues temporarily and others permanently.  The parties agreed to domesticate the Florida order, give Wife sole custody of Child, and finalize Husbands child support obligation and payment schedule for his arrearages.  As to Husbands visitation schedule, the consent order reads as follows:

[Husband] shall have temporary visitation to include 9:00 a.m. December 26 through six p.m. January 2 each year; Easter vacation or spring break each year from the end of school until 6:00 p.m. the day before school resumes, four weeks during the summer of 2003 and six weeks every summer thereafter provided there are no major difficulties during the summer of 2003, and such other times as the parties may agree, including weekends when [Father] may be [in] the York County area.  This provision is intended to be permanent as well as temporary. (emphasis added)

A hearing on the parties remaining issues was held in February 2004.  Husband did not appear, but his counsel was present.  The family courts final order required Husband to obtain a $56,703 life insurance policy to secure future child support payments.  The family court also awarded Wife $1,095 in attorneys fees accrued since the consent orders entry.  Husbands summer visitation with Child was stated in the order simply as four weeks during the summer.  This appeal followed the denial of Husbands motion to reconsider.
STANDARD OF REVIEW
In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  This broad scope of review, however, does not require us to disregard the findings of the family court.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We remain mindful that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).
DISCUSSION
I. Husbands Visitation
Husband argues the family court erred in modifying his summer visitation schedule from six to four weeks because the issue was not properly before the family court to determine.  We agree and modify the terms of Husbands summer visitation to those agreed upon in the parties consent order.
As stated in Heins v. Heins, 344 S.C. 146, 543 S.E.2d 224 (Ct. App. 2001):

It is well settled that ordinarily a party may not receive relief not contemplated in his pleadings.  While it is true that pleadings in the family court must be liberally construed, this rule cannot be stretched so as to permit the judge to award relief not contemplated by the pleadings.  Due process requires that a litigant be placed on notice of the issues which the court is to consider.

Id. at 152, 543 S.E.2d at 227 (internal citations omitted).  
Although the issue of Husbands visitation was discussed in Wifes initial pleadings, the 2003 consent order between the parties specifically states that its resolution of the visitation issue is permanent.  As stated above, Husbands summer visitation was agreed upon to be six weeks, contingent only upon major difficulties arising during Childs 2003 summer visit.  
At the outset of the hearing on Wifes remaining issues, the following colloquy took place between the family court judge and both parties counsel:

Wifes Counsel:  The temporary [consent order] dealt with some matters on a permanent basis, your honor and I dont know if you would just like to know what they are because there are some issues are really not  
The Court:  Well, tell me 
Wifes Counsel:  There are some issues in the complaint that are not really before you, your honor.
The Court:  Well, tell me what issues are to be tried today.
Wifes Counsel:  Okay, your honor, [Wifes Counsel gives lengthy discussion on Childs transportation to and from visitation, child support and arrearages, the life insurance policy, and attorneys fees] . . .
The Court:  Do you agree, [Husbands Counsel]?
Husbands Counsel:  Let me make sure I understand.  I understand that to be transportation, child support, insurance arrearage, life insurance, and attorneys fees.
Wifes Counsel:  Correct.

During the hearing, Childs 2003 summer visitation was addressed only once and referenced only in regard to Wifes counsels fee affidavit.  When questioned by the court about Childs visitation schedule, Wifes counsel replied:

Your honor, it says it is December 26th through January 2nd of each year, spring break, and four weeks during the summer and six weeks if there were no major difficulties, but I think there was, and that may be conceded, reflected in my affidavit, and other terms that they can agree on when he is in the area the child lives.

Wifes counsels fee affidavit vaguely references an incident during which Child was injured while playing with Husbands girlfriend and her child.  At no other time during the hearing was the Childs 2003 summer visit with Husband mentioned.
We conclude the above allegations insufficient to properly bring the visitation issue before the family court.  Accordingly, the family court erred in altering Husbands visitation when such relief was not requested and the issue was permanently resolved by a prior consent order.  As agreed by the parties in the consent order, we modify the family court order to read as follows:
HOLIDAY AND SUMMER VISITATION

The minor child has three scheduled visits with Father each year: Christmas from December 26th through 6:00 p.m. January 2nd; Easter vacation or spring break each year from the end of school until 6:00 p.m. the day before school resumes; and four weeks during the summer of 2003 and six weeks every summer thereafter provided there are no major difficulties during the summer of 2003. [remaining section of family court order affirmed]

II. Life Insurance Policy
Husband argues the family court erred in requiring him to maintain a declining balance term life insurance policy to secure the payment of child support.  We disagree.
The family court is within its legal authority to require a supporting spouse to maintain a life insurance policy naming the child as beneficiary to insure the continued support of the minor child.  Ivey v. Ivey, 286 S.C. 315, 318, 334 S.E.2d 123, 125 (Ct. App. 1985).  The decision to require the maintenance of a life insurance policy for the benefit of a minor child must be justified by compelling reasons, such as failure to pay child support in the past.  Id.
In the present case, Husband conceded he has a history of failing to make child support payments.  Furthermore, Husbands sole income consists of monthly unemployment benefits, making the potential for future payment failures a reasonable concern.  Because Husband demonstrated a past reluctance to comply with child support orders and an unstable financial history, the family court did not err in requiring Husband to maintain a life insurance policy for the benefit of Child.
III. Attorneys Fees 
Husband argues the family court erred in awarding Wife $1,095 in attorneys fees accrued since entry of the parties consent order.  We disagree.
An award of attorneys fees and costs is a discretionary matter not to be overturned absent an abuse of discretion.  Patel v. Patel, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004).  As did the family court, we have reviewed the applicable factors set forth in Glasscock v. Glasscock, 304 S.C. 158, 403 S.E.2d 313 (1991), and E.D.M. v. T.A.M., 307 S.C. 471, 415 S.E.2d 812 (1992).  See Shirley v. Shirley, 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct. App. 2000) (outlining the applicable factors in determining whether to grant attorneys fees and the proper fee amount).  Under the facts and circumstances of this case, particularly the charitable payment schedule granted Husband to repay Wifes attorneys fees, we find no abuse of discretion in the award.
For the foregoing reasons, the family courts order is AFFIRMED AS MODIFIED in section one of this opinion.
KITTREDGE, SHORT, and WILLIAMS, concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.